# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | Case No. 03-12872 (KJC) |
| Reorganized Debtor. | ) | |
| _____ | ) | |
| | ) | |
| THE PLAN COMMITTEE OF | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | Civil Action No. 06-157 (JJF) |
| v. | ) | |
| | ) | **Oral Argument Requested** |
| NORTHWESTERN CORPORATION, *et al.* | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |
| | ) | |

## REPLY BRIEF OF APPELLANT, THE PLAN COMMITTEE TO (I) THE ANSWERING BRIEF OF APPELLEES MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK AND (II) NORTHWESTERN'S RESPONSE TO APPELLANT'S OPENING BRIEF

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Alan W. Kornberg
Kelley A. Cornish
Margaret A. Phillips
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000

**THE BAYARD FIRM**
Neil B. Glassman (No. 2087)
Charlene Davis (No. 2336)
Eric M. Sutty (No. 4007)
222 Delaware Avenue, Suite 900
Post Office Box 25130
Wilmington, Delaware 19899
Telephone: (212) 655-5000

Dated: May 22, 2006

**Attorneys for the Plan Committee**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

I. PRELIMINARY STATEMENT .............................................................................. 1

II. REPLY ARGUMENT............................................................................................. 2

      A.     The Confirmed Plan Was Not Modified by the QUIPS Litigation
            Reserve Stipulation ............................................................................................ 2

      B.     In any Event, a Surplus Distribution Should be Made Because the
            Disputed Claims Reserve Holds More than Sufficient Surplus Shares to
            Fully Reserve for the QUIPS Litigation Claims and to Make a Surplus
            Distribution .......................................................................................................... 4

III. CONCLUSION....................................................................................................... 7

## TABLE OF AUTHORITIES

### FEDERAL STATUTES

11 U.S.C. § 1127(b) ....................................................................................................1, 2, 3

Appellant, the Plan Committee,[1] files this brief in response to (i) the Answering Brief of Appellees Magten and Law Debenture [Docket No. 16] and (ii) NorthWestern's Response to Appellant's Opening Brief [Docket No. 17] (collectively, the "Answering Briefs"), and in further support of the Plan Committee's appeal.

## I.
## PRELIMINARY STATEMENT

The parties to this appeal agree on the following key points: (1) the language of Section 7.7 of the Plan—which provides for Surplus Distributions of New Common Stock to holders of Allowed Claims every six months if certain conditions are met—is clear and unambiguous; (2) the QUIPS Litigation Claims are the only remaining Disputed Claims in NorthWestern's chapter 11 case; (3) the QUIPS Litigation Claims aggregate no more than $50 million; and (4) the Disputed Claims Reserve now contains a "surplus" of shares of New Common Stock that far exceeds the number of shares needed to satisfy the QUIPS Litigation Claims in full, if necessary.

As a threshold matter, the Appellees' argument that the Plan must be read together with the QUIPS Litigation Reserve Stipulation to prevent *any* Surplus Distributions until *all* Disputed Claims are resolved is wrong—the QUIPS Litigation Reserve Stipulation did not modify the Plan in accordance with the strict requirements for modification of a confirmed plan set forth in section 1127(b) of the Bankruptcy Code.  In any event, the QUIPS Litigation Reserve Stipulation and the Plan, when read together, do not prohibit Surplus Distributions until *all* Disputed Claims are resolved.  Moreover, even if the Appellees are correct that the Plan must be read in conjunction with the QUIPS

---

[1]    Capitalized terms not otherwise defined herein have the meanings used in Appellant's Opening Brief [Docket No. 13].

Litigation Reserve Stipulation, there are more than enough shares of New Common Stock in the Disputed Claims Reserve to satisfy the full amount of the QUIPS Litigation Claims, if necessary, *and* immediately make a Surplus Distribution to holders of Allowed Claims.

For the reasons set forth in Appellant's Opening Brief and more fully set forth below, this Court should reverse the Bankruptcy Court's Order denying the Surplus Distribution Motion and, at a minimum, require NorthWestern promptly to make a Surplus Distribution after fully reserving for the QUIPS Litigation Claims.

## II.
## REPLY ARGUMENT

**A.    The Confirmed Plan Was Not Modified**
**By the QUIPS Litigation Reserve Stipulation**

It is indisputable that the language of Section 7.7 is clear and unambiguous. As noted in Appellant's Opening Brief, a confirmed plan constitutes a binding contract on a debtor and its creditors. If the plan language is clear and unambiguous, courts may not refer to extrinsic evidence to interpret the meaning of the provision of a confirmed plan unless the plan has been modified strictly in accordance with section 1127(b) of the Bankruptcy Code. The Appellees do not contend that Section 7.7 is ambiguous. Nonetheless, they argue that the Plan must be read together with the QUIPS Litigation Reserve Stipulation and Webster's II New College Dictionary to either (i) alter the meaning of "Surplus Distributions" so that "Surplus Distributions" only means extra shares available *after* all Disputed Claims are resolved or (ii) add a condition to Section 7.7 of the Plan requiring the resolution of *all* Disputed Claims before *any* Surplus Distributions may be made.

First, because the Appellees do not contend that the Plan definition of "Surplus Distributions" is ambiguous (and it is not), their contention that Webster's II New College Dictionary's definition of "surplus" should be considered to interpret "Surplus Distributions" should be flatly rejected.

Moreover, as discussed more fully in Appellant's Opening Brief, a confirmed Plan may only be modified pursuant to section 1127(b) of the Bankruptcy Code. Section 1127(b) allows for post-confirmation plan modification, but only "if circumstances warrant such modification" and the court, "*after notice and a hearing, confirms such plan as modified.*" See 11 U.S.C. § 1127(b) (emphasis added). The QUIPS Litigation Reserve Stipulation was not approved as a modification to the confirmed Plan, as required by section 1127(b). Rather, the QUIPS Litigation Reserve Stipulation was initially filed for approval (not as a plan modification) and noticed to parties post-confirmation on the Effective Date (November 1, 2004).[2] The order approving the QUIPS Litigation Reserve Stipulation was entered two days later [App. Des. No. 33]. This independent approval of the QUIPS Litigation Reserve Stipulation on two days notice with only a cursory reference to it at a hearing on November 3, 2004 is not what Congress intended to qualify as the requisite steps to modify a confirmed plan. There was simply no notice or language in the QUIPS Litigation Reserve Stipulation itself giving the parties or the Bankruptcy Court any inkling that NorthWestern intended to modify the Plan to prohibit Surplus Distributions pending the resolution of *all* Disputed Claims.

---

[2]    See Des. No. 46 of Appellees Magten and Law Debenture's Joint Designation of Additional Items to be Included in the Record on Appeal.

Finally, even if the QUIPS Litigation Reserve Stipulation was considered a proper modification of the Plan, the two documents cannot be read to prohibit Surplus Distributions until *all* Disputed Claims are resolved, as urged by the Appellees and found by the Bankruptcy Court. Quite simply, there is no such provision in either the Plan or the QUIPS Litigation Reserve Stipulation. Rather, the QUIPS Litigation Reserve Stipulation simply provides for the establishment of a reserve for purposes of funding a recovery on the QUIPS Litigation Claims, if ever necessary.

**B.    In any Event, a Surplus Distribution Should be Made Because the Disputed Claims Reserve Holds More than Sufficient Surplus Shares to Fully Reserve for the QUIPS Litigation Claims and to Make a Surplus Distribution**

In arguing that no Surplus Distributions should be made until *all* Disputed Claims are resolved, the Appellees are attempting to hold hostage the recoveries of the Debtors' creditors to coerce a resolution of the QUIPS Litigation. As a fiduciary for creditors, the Plan Committee must resist this unwarranted effort—particularly because the Disputed Claims Reserve holds more than sufficient shares of New Common Stock to reserve *fully* for the disputed QUIPS Litigation Claims *and* to allow for an immediate Surplus Distribution to holders of Allowed Claims.

Appellees Magten and Law Debenture attempt to create confusion where there is none. As the Bankruptcy Court found, the Disputed Claims Reserve now holds surplus shares.[3] The PPL Settlement alone freed up 2,204,550 shares of New Common Stock that can be used to both increase the amount of shares in the QUIPS Litigation Reserve and make Surplus Distributions in accordance with Section 7.7 of the Plan. Moreover, taking into account the numerous other Disputed Claims that the Debtor has

---

[3]    See Order at ¶ I and Hearing Transcript at p. 53.

settled for equal or less than the amount of shares reserved for them, there are currently 3,096,682 shares in the Disputed Claims Reserve.[4]

As NorthWestern notes[5] and Magten admits in connection with its appeal of the Confirmation Order,[6] the QUIPS Litigation Claims at most total $50 million. The QUIPS Litigation Reserve currently contains 787,339 shares, enough to satisfy a $25 million Class 9 Claim. Thus, NorthWestern would only be required to add another 787,339 shares to the existing sub-reserve (for a total reserve of 1,574,678 shares), to fully satisfy a $50 million Class 9 Claim. Therefore, as summarized in the chart below, there are more than 1.5 million shares that should now be distributed to creditors under Section 7.7 of the Plan:

| | |
|---|---:|
| **Original Number of Shares in Disputed Claims Reserve** | **4,409,100** |
| Less Shares Distributed Pursuant to Various Claim Settlement Orders | (1,312,418) |
| **Remainder of Shares (Including 2,204,550 shares released from the PPL Segregated Reserve)** | **3,096,682** |
| Existing Number of Shares in QUIPS Litigation Reserve | (787,339) |
| Additional Shares Needed to Pay QUIPS Litigation Claims in Full[7] | (787,339) |
| | |
| **Remainder of Shares Available for Distribution** | **1,522,004** |

[4]    As admitted by NorthWestern at the hearing on the Surplus Distribution Motion, the Disputed Claims Reserve holds at least 3,096,628 shares (including the shares held in the QUIPS Litigation Reserve) as a result of distribution of approximately 1.3 million shares to settle various Disputed Claims. See Hearing Transcript at p. 43 and App. Des. Nos. 6, 32, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 72, 74, 75, 80, 82, 83, 88.

[5]    See NorthWestern Answering Brief at pp. 4-5; Hearing Transcript at p.44.

[6]    In connection with its appeal of the Confirmation Order, Magten filed a Motion for Leave Pursuant to Local Rule 7.1.2 (c) to respond to D.I. 98 dated April 27, 2006 (the "Opposition"), in which it admitted that the "full value" of its claims regarding the QUIPS Litigation was no more than $50 million and that the Disputed Claims Reserve contains a "surplus" of shares. See p. 3 of Magten's Opposition [CA 04-1389 Docket Item No. 100] a copy of which is attached hereto as Exhibit "A." Magten and Law Debenture's suggestions in footnote 10 of their Answering Brief that their claims are entitled to pre-petition and post-petition interest and legal fees are baseless. As holders of Class 9 General Unsecured Claims (if their claims are ultimately allowed at all), such additional amount may not be paid to either Magten or Law Debenture. See Plan at §4.8(b)(ii), and App. Des. No. 30 at pp. 29 and 39.

[7]    Assuming the QUIPS Litigation Claims total the full $50 million, as claimed.

Furthermore, as all parties agree that NorthWestern has resolved all of its Class 9 Disputed Claims except for the QUIPS Litigation Claims,[8] NorthWestern is no longer required to maintain shares in the Disputed Claims Reserve for any creditors other than Magten and Law Debenture.

Thus, even if Section 7.5 of the Plan and the QUIPS Litigation Reserve Stipulation were read together to require the Debtor to ensure that there are sufficient shares in the Disputed Claims Reserve to cover the full amount of the QUIPS Litigation Claims, there can be no dispute that the Disputed Claims Reserve now contains more than 1.5 million excess shares that should be distributed in accordance with Section 7.7 of the Plan.

Lastly, Appellees' argument that the Plan Committee's plain reading of Section 7.7 of the Plan results in unequal treatment or unfair discrimination in violation of section 1129(b) of the Bankruptcy Code is a red herring and must fail.  In the first instance, the language of Section 7.7 of the Plan was confirmed by the Bankruptcy Court. Magten and Law Debenture did not object to the language in Section 7.7 of the Plan on any grounds, despite raising objections to confirmation on multiple other issues that were all overruled.[9]  The Debtor was the plan proponent, and could have included a provision expressly requiring that Surplus Distributions only be made after *all* Disputed Claims are resolved if that was the intent.   In any event, because the Disputed Claims Reserve holds approximately 1.5 million shares more than is necessary to reserve *fully* for the disputed QUIPS Litigation Claims, there is no plausible argument that to make Surplus

---

[8]    See NorthWestern Answering Brief at pp. 4-5; Opposition at p. 3.

[9]    See Des. Nos. 18, 19, 20 and 21 of Appellees Magten and Law Debenture's Joint Designation of Additional Items to be Included in the Record on Appeal.

Distributions at this time would constitute unfair discrimination or violate any provision of the Bankruptcy Code.

## III.
## CONCLUSION

Thus, for all of the reasons above and those set forth in the Appellant's Opening Brief, the Order should be reversed and, at a minimum, require NorthWestern promptly to make a Surplus Distribution after fully reserving for the QUIPS Litigation Claims.

Dated: May 22, 2006

THE BAYARD FIRM

By: _____

Neil Glassman (#2087)
Charlene D. Davis (#2336)
Eric M. Sutty (#4007)
222 Delaware Avenue, Suite 900
Post Office Box 25130
Wilmington, Delaware 19899
Telephone: (302) 650-5000

- and -

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Alan W. Kornberg
Kelley A. Cornish
Margaret A. Phillips
1285 Avenue of the Americas
New York, New York 10019
Telephone (212) 373-3000

Attorneys for the Plan Committee

626175v1

7

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | Bankruptcy Case No. 03-12872 (JLP) |
| | ) | |
| Reorganized Debtor. | ) | |
| | ) | |
| | ) | |
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | CA 04-1389-JJF |
| | ) | CA 04-1508-JJF |
| NORTHWESTERN CORPORATION, | ) | CONSOLIDATED |
| | ) | |
| Appellee. | ) | |
| | ) | |

## MOTION BY MAGTEN ASSET MANAGEMENT CORPORATION FOR LEAVE, PURSUANT TO LOCAL RULE 7.1.2(c), TO RESPOND TO D.I. 98

Magten Asset Management Corporation ("Magten"), by and through its undersigned counsel, respectfully moves for leave pursuant to D. Del. L.R. 7.1.2(c) to respond to NorthWestern Corporation's Supplemental Brief in Support of Its Motion to Dismiss the Consolidated Appeals. In support of its request, Magten states as follows:

1.    On April 20, 2006, NorthWestern Corporation (the "Debtor") filed its Supplemental Brief in Support of Its Motion to Dismiss the Consolidated Appeals (the "Supplemental Brief"), which was docketed as item 98 in lead case 04-cv-1389.

2.    By its Supplemental Brief, the Debtor brings to the Court's attention an authority decided after the Debtor completed briefing on its motion to dismiss [D.I. 40] Magten's consolidated appeals from orders of the Bankruptcy Court that (i) confirmed the Debtor's Second

120087.01600/40161618v.1

Amended and Restated Plan of Reorganization and (ii) approved a certain Memorandum of Understanding ("Debtor's Motion to Dismiss the Consolidated Appeals").

3.    The Debtor's Supplemental Brief contains a brief discussion of the recent authority, as well as argument as to how that authority should be applied to Debtor's Motion to Dismiss the Consolidated Appeals.

4.    Magten requests leave to file a response, in the form attached hereto at Exhibit A, to briefly address the authority and argument contained in the Debtor's Supplemental Brief.

Dated: Wilmington, Delaware
  April 27, 2006

Respectfully submitted,

BLANK ROME LLP

_Dale R. Dubé_

Dale R. Dubé (I.D. No. 2863)
Bonnie Glantz Fatell. (I.D. No. 3809)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP
Bonnie Steingart
Gary L. Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for Appellant Magten Asset
Management Corporation

SO ORDERED, this _____ day of _____, 2006.

_____
Hon. Joseph J. Farnan, Jr.
U.S. District Court Judge

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2006, I served by hand delivery and

electronically filed the Motion by Magten Asset Management Corporation for Leave, Pursuant to

Local Rule 7.1.2(c), to Respond to D.I. 98 using CM/ECF which will send notification of such

filing(s) to the following:

Robert J. Dehney, Esquire
Curtis S. Miller, Esquire
MORRIS NICHOLS ARSHT
   & TUNNELL
1201 Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
rdehney@mnat.com
cmiller@mnat.com

Denise Seastone Kraft, Esquire
EDWARDS ANGELL PALMER &
   DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
dkraft@edwardsangell.com

Neil B. Glassman, Esquire
Charlene D. Davis, Esquire
Eric M. Sutty, Esquire
THE BAYARD FIRM
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
nglassman@bayardfirm.com
cdavis@bayardfirm.com
esutty@bayardfirm.com
Phone: 302 655-5000
nglassman@bayardfirm.com
cdavis@bayardfirm.com

David A. Jenkins, Esquire
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899
daj@skfdelaware.com

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
counihanv@gtlaw.com
melorod@gtlaw.com

Kathleen M. Miller, Esquire
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899
kmm@skfdelaware.com

I also certify that, on this 27th day of April, 2006, I served the aforementioned document,

by e-mail and Federal Express, upon the following non-registered participants:

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110-1832
jsnellings@nixonpeabody.com
adarwin@nixonpeabody.com

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
sreisman@cm-p.com
jpizzurro@cm-p.com
ndelaney@cm-p.com
mharwood@cm-p.com

Alan W. Kornberg, Esquire
Margaret A. Phillips, Esquire
Ephraim I. Diamond, Esquire
PAUL, WEISS, RIFKIND, WHARTON
   & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
akornberg@paulweiss.com
mphillips@paulweiss.com
ediamond@paulweiss.com

Bijan Amini, Esquire
Avery Samet, Esquire
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
bamini@samlegal.com
asamet@samlegal.com

Dennis E. Glazer, Esquire
Paul Spagnoletti, Esquire
DAVIS POLK & WARDWELL
450 Lexington Avenue, Room 3004
New York, NY 10017
dennis.glazer@dpw.com
paul.spagnoletti@dpw.com

Jesse H. Austin, III, Esq.
Karol K. Denniston, Esq.
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, Suite 2400
Atlanta, GA 30308
jessaustin@paulhastings.com
karoldenniston@paulhastings.com

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
BROWNING, KALECZYC, BERRY
   & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624
stan@bkbh.com
kim@bkbh.com

_____
Dale R. Dubé  (I.D. No. 2863)

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | |
| | : | Case No. 03-12872 (KJC) |
| Debtor. | : | |
| | : | |
| | : | |
| | : | |
| MAGTEN ASSET MANAGEMENT CORP. | : | |
| | : | |
| Appellant, | : | |
| v. | : | CA NO. 04-1389 (JJF) |
| | : | CA No. 04-1508 (JJF) |
| NORTHWESTERN CORPORATION, | : | CONSOLIDATED |
| | : | |
| Appellee. | : | |

**OPPOSITION OF MAGTEN ASSET MANAGEMENT CORPORATION TO
SUPPLEMENTAL BRIEF OF NORTHWESTERN CORPORATION IN
SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED APPEALS**

**FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP**
Bonnie Steingart, Esq.
Gary L. Kaplan, Esq.          -and-
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000

Counsel for Magten Asset Management
  Corporation

**BLANK ROME LLP**
Dale R. Dubé (I.D. No. 2863)
Bonnie Glantz Fatell (I.D. No. 3809)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400

Dated: April 27, 2006
Wilmington, Delaware

Appellant Magten Asset Management Corporation ("Magten"), by and through its undersigned counsel, hereby submits this opposition (the "Opposition") to NorthWestern's supplemental brief (the "Supplemental Brief") filed by NorthWestern Corporation ("NorthWestern") in support of NorthWestern's motion to dismiss the consolidated appeals (the "Appeals"). In support of this Opposition, Magten respectfully states as follows.[1]

## ARGUMENT

NorthWestern filed its Supplemental Brief to bring to the Court's attention the recent Third Circuit decision of In re SLI, Inc., in which the Third Circuit dismissed an appeal of a confirmation order on grounds of equitable mootness. 2006 U.S. App. LEXIS 5188 (3d Cir. March 1, 2006). While NorthWestern argues that the SLI decision supports its motion to dismiss the Appeals as equitably moot because "NorthWestern's circumstances are identical to those presented in SLI" (Supplemental Brief, p. 3), NorthWestern's reliance on SLI is misplaced. The circumstances in the Appeals are readily distinguishable from those in SLI since this Court can feasibly and easily fashion relief for Magten without upsetting the Plan and/or harming any potential third parties. Indeed, SLI does not break any new ground, rather SLI simply restates current Third Circuit law that an appeal of a confirmation order is equitably moot if the court cannot fashion a remedy without upsetting the chapter 11 plan. SLI, 2006 U.S. App. Lexis 5188 at *4 -*5.

---

[1]    All capitalized terms not expressly defined herein shall have the meanings ascribed to them in NorthWestern's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan").

As further explained in Magten's Opposition and Memorandum of Law to NorthWestern's Motion to Dismiss the Consolidated Appeals, filed on June 30, 2005 (D. I. No. 59), courts have mandated that equitable mootness should be applied sparingly and, specifically, in circumstances where prudential reasons dictate that the court cannot provide some means of effective relief for the appealing party. See generally, Zenith Elecs. Corp. 329 F.3d 338, 340 (3d Cir. 2003); In re Continental, 91 F.3d 553, 559 (3d Cir. 1996); In re UNR Indus. Inc., 20 F.3d 766, 769 (7th Cir. 1994). See also In re PWS Holding Corp., 228 F.3d 224, 235-36 (3d Cir. 2000) (holding that an appeal should be dismissed as equitably moot if relief would be inequitable). SLI did not alter this principle. While Magten does not dispute that NorthWestern has taken action to substantially consummate the Plan, this factor does not automatically render the Appeals moot nor does it preclude the Court from fashioning appropriate relief. See Chateaugay Corp. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 9542 (2d Cir. 1993) ("substantial consummation of a reorganization plan is a momentous event, but it does not necessarily make it impossible or inequitable for an appellate court to grant effective relief"); In re AOV Indus. Inc. 792 F.2d 1140, 1148 (D.C. Cir. 1986) (substantial consummation is "not a blanket discharge" of "judicial duty to examine carefully each request for relief"); In re Ionosphere Clubs, Inc., 184 B.R. 648, 651 (S.D.N.Y. 1995) ("substantial consummation of a plan does not necessarily make it impossible or inequitable for a reviewing court to grant relief.").

In SLI, the Third Circuit evaluated the potential alternative forms of relief proposed by the appealing creditor and determined that *each* form of intermediate relief "would impair the success of the Plan" and would be "akin to a full reversal" of the

2

confirmation order. <u>SLI</u>, 2006 U.S. App. Lexis 5188 at *9. This is not the case in Magten's Appeals.

Despite the substantial consummation of the Plan, NorthWestern can readily provide Magten with a recovery on the full value of its claim – a $50 million allowed claim on account of the fraudulent conveyance of utility assets to Northwestern (the "Montana Utility Assets") – without unraveling the Plan or affecting the rights of any other creditor. Pursuant to the Plan, unsecured creditors were to receive approximately 63 cents on the dollar on account of their claims in shares of New Common Stock. The New Common Stock was significantly undervalued under the Plan and, to date, the New Common Stock has increased in value by more than 75%,[2] furnishing creditors with a recovery of more than 100 cents on the dollar. In accordance with section 7.5 of the Plan, NorthWestern established a disputed claims reserve of shares of New Common Stock for the resolution of Class 9 disputed claims, including Magten's (the "Disputed Claims Reserve") – a pot of shares that cannot revert back to NorthWestern and is large enough to provide Magten with a full recovery on account of its claim. As there are no other creditors with disputed claims to share in the Disputed Claims Reserve, no creditor would be impaired by utilizing the shares to provide relief to Magten. Indeed, given this alleged new found "surplus" of shares, certain creditors that have already received a 100% recovery on account of their claims and 75% more than they were to receive under the Plan have sought to have this "surplus" reserve paid over to them.

---

[2]    On April 26, 2006, NorthWestern announced that it has signed a definitive agreement to be acquired by Babcock & Brown Infrastructure Ltd. for $37 a share of common stock in an all cash transaction that values NorthWestern at approximately $2.2 billion. At a value of $37 a share, NorthWestern's stock will have appreciated in value by 85% from the Plan value of $20 a share.

3

Therefore, due to the fact that this Court can grant Magten relief without

upsetting the Plan and without prejudicing the rights of any creditors, the equitable

mootness doctrine as applied in <u>SLI</u> is wholly inapplicable in this case and thus Magten

should not be denied its rights to pursue the merits of the Appeals.

Dated:  Wilmington, Delaware
        April 27, 2006

                                    BLANK ROME LLP


                                    _____
                                    Dale R. Dubé (I.D. No. 2863)
                                    Bonnie Glantz Fatell. (I.D. No. 3809)
                                    1201 Market Street, Suite 800
                                    Wilmington, DE 19801
                                    Telephone:   (302) 425-6400
                                    Facsimile:   (302) 425-6464

                                            - and -

                                    FRIED, FRANK, HARRIS, SHRIVER &
                                    JACOBSON LLP
                                    Bonnie Steingart
                                    Gary L. Kaplan
                                    One New York Plaza
                                    New York, NY 10004
                                    Telephone:  (212) 859-8000
                                    Facsimile:  (212) 859-4000

                                    Counsel for Magten Asset Management
                                        Corporation

4

## CERTIFICATE OF SERVICE

I, Eric M. Sutty, do hereby certify that on this 22nd day of May, 2006, I caused a true and correct copy of the attached **Reply Brief of Appellant, The Plan Committee to (I) The Answering Brief of Appellees Magten Asset Management Corporation and Law Debenture Trust Company of New York and (II) NorthWestern's Response to Appellant's Opening Brief** to be served on the attached service list via hand delivery and electronic mail to local parties and via U.S. First Class mail and electronic mail to all remaining parties.

Eric M. Sutty (No. 4007)

626149v1

# North Western Corp.

# Service List

Alan W. Kornberg, Esquire
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York   NY   10019-6064

Victoria Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig, LLP
Suite 1200
The Nemours Building
1007 North Orange Street
Wilmington   DE   19801

Jesse H. Austin, III, Esquire
Karol K. Denniston, Esquire
Paul, Hastings, Janofsky & Walker LLP
600 Peachtree Street, N.E.
Twenty-fourth Floor
Atlanta   GA   30308-2222

*Counsel for Debtor*

Mark  Kenney, Esquire
Office of the United States Trustee
Suite 2313
844 King Street
Wilmington   DE   19801

Adam G. Landis, Esquire
Kerri K. Mumford, Esquire
Landis Rath & Cobb LLP
919 Market Street
Sutie 600
Wilmington   DE   19801

Dale R. Dube, Esq.
Bonnie  Glantz Fatell, Esq.
Blank Rome LLP
1201 Market Street
Suite 800
Wilmington   DE   19801

*Magten Asset Management Corp.*

Bonnie Steingart, Esq.
Gary L. Kaplan, Esq.
John W. Brewer, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York   NY   10004

John V. Snellings, Esq.
Francis C. Morrissey, Esq.
Lee  Harrington, Esq.
Nixon Peabody LLP
100 Summer Street
Boston   MA   02110-1832

Kathleen M. Miller , Esq.
David A. Jenkins, Esq.
Smith, Katzenstein & Furlow LLP
800 Delaware Avenue
7th Flr.
P.O. Box 410
Wilmington   DE   19899

Phillip Bentley, Esq.
Matthew J. Williams, Esq.
Kramer Levin Naftalis & Frankel
1177 Avenue of the Americas
New York   NY   10036

Steven J.  Reisman, Esq.
Joseph D.  Pizzurro, Esq.
Nancy E. Delaney, Esq.
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York   NY   10178-0061